Abraham **RESNIKOFF**, Plaintiff,

v.

John W. **GARDNER**, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 695.

United States District Court
N. D. Florida,
Marianna Division.

May 22, 1968.

8. N.Y. Code of Crim.Proc. § 555 (McKinney 1967 Supp.).

Bert A. Davenport, of Davenport, Johnston, Harris & Urquhart, Panama City, Fla., for plaintiff.

Clinton Ashmore, U. S. Atty., Tallahassee, Fla., for defendant.

## MEMORANDUM-DECISION

CARSWELL, Chief Judge.

This Social Security case comes before the Court upon joint motion for summary judgment.

Defendant Secretary of Health, Education and Welfare ("the Secretary") seeks to recover alleged over-payments of disability benefits on the ground that plaintiff ("the Recipient") was not disabled during the disputed periods from April 1962 through December 1968 and was then able to and was in fact engaging in substantial gainful activities in the nature of an insurance agency.

Recipient replies that he was without fault in reference to the alleged over-payments and urges that under the relevant legal tests he was then disabled as a matter of law. Moreover, Recipient submits that his income during the disputed period was slight and even if significant would *not* reflect the extent of the disability condition which he was laboring against. The issue is whether the claim as announced by appropriate authorities of the Social Security Administration for recovery or adjustment of the alleged over-payments is supported by substantial record evidence (considering the record as a whole) and whether allowing recovery or adjustment of the alleged over-payments would be against equity and good conscience within the meaning of 42 U.S.C. § 404(b).

The Court concludes that the Secretary's position is not supported by substantial evidence, is against equity and

good conscience, and is predicated upon improper standards.

During the disputed period Recipient was paid $5,334.00 in disability benefits. Recipient's net income which is said to show his ability to work was said to be $2,118.66 in 1963 and less than $1,000 during that portion of 1962 which is in question. This income was from insurance sales during a period beginning two years after Recipient had completed an extension course in insurance.

The Secretary recognizes that Recipient was disabled during the prior period when the extension course was completed, and the direct evidence indicates that the insurance sales activities during the disputed period were while Recipient was a bed patient most of the time. It is argued that Recipient's income from insurance sales reflects substantial activity on his part; yet he had business income from other sources where he had engaged in no activity.

Recipient's disability resulted from a severe myocardial infarction commonly known as a heart attack which occurred in 1957 and from which Recipient was only given a twenty percent chance to fully recover. During the disputed period Recipient continued to have an average of eight or nine pericarditis attacks per year. Pericarditis is an inflammation, sometimes severe, of the outer membrane of the heart. There is evidence of the tremendous pain associated with these seizures as well as the immobilizing aspects of the attacks. Each of these attacks lasted from twenty days to a month.

The fact that Recipient had some relief from these attacks prompted his personal physician's letter stating that during the disputed period Recipient was placed on limited activity. Contrary to the plain import of the doctor's statement, the Secretary assumes that limited activity indicates the termination of the disability. During the disputed period the doctor's instructions to Recipient were "not to perform manual labor of any type and to avoid all emotional and mental stress." The Secretary would emphasize the word *manual* in these instructions, but Recipient's actual behavior during the disputed period, emphasizes the sharp limitation on his activity to *avoid all emotional and mental stress.* This is the only medical evidence. Moreover, the Hearing Examiner made a specific finding that Recipient was without fault in reference to the alleged over-payments.

■ The basic facts are not in dispute and the findings of fact made by the Secretary are not challenged by Recipient. However, ultimate conclusions drawn from these facts *are* contested. The problem is thus a legal one for the Court to decide. Kilby v. Folsom, 238 F.2d 699, 700 (3rd Cir. 1956).

The Hearing Examiner assumed that Recipient's disability terminated in 1962 in spite of the attending physician's statement that this did not occur until December 1963. During his disability Recipient was informed by doctors that the chances were eighty percent that his disability would remain chronic and only twenty percent that his condition would eventually clear up.

■ The Hearing Examiner made his decision by improperly looking at the past events in the light of present day conditions. Recipient now looks as if he is a fit individual, but the record does not sustain the conclusion that he was fit during the period in question. Recipient is not to be penalized because he recovered when there was slight chance that he would do so and because he appeared fit later on at the time when the secretary's investigation was made.

■ The Hearing Examiner also construed the terms "inability to engage in any substantial gainful activity" to mean total disability. This interpretation has been rejected by our own Fifth Circuit in the case of Flemming v. Booker, 283 F.2d 321, 324 (5th Cir. 1960). The Court there cited Mabry v. Travelers Insurance Co., 193 F.2d 497 (5th Cir. 1952), in which Judge Holmes stated that one may attempt to work or

actually work while in fact disabled. See also Berry v. United States, 312 U.S. 450, 455, 61 S.Ct. 637, 85 L.Ed. 945 (1941). On the authority of Dunn v. Folsom, 166 F.Supp. 44, 49 (D.C.Ark.1958) it is further noted that "substantial" modifies "activity" and not "gainful" which is merely another qualification on "activity." To disqualify Recipient there must be *substantial activity* as well as substantial gains.

Most of Recipient's business was conducted from his bed, and he would answer the telephone from his bed and thus carry on his meager activities.

■ In the case of Green v. Secretary of Health, Education and Welfare, 218 F. Supp. 761, 764 (D.C.D.C.1963) the Court said that it would be against equity and good conscience to ask for recovery of incorrect payments from an individual who is without fault regardless of his financial circumstances where the individual by reason of the over-payment has relinquished a valuable right. The Court in *Green* stated that the right to decide intelligently how much work one wants to do is such a valuable right. Recipient did not remove his medical disability by attempting to care for himself and his wife. If Recipient had not tried to better himself, the Examiner could never have questioned Recipient's disability, and there could be no demand for return of the disability payments in view of the doctor's report and Recipient's confinements to bed.

■ Although the Secretary supposes an inconsistency from Recipient's deduction as business expenses during the disputed period a Cadillac automobile, this is permissible under the income tax laws in proportion to Recipient's actual business use of the car and limited by Recipient's actual gains. Recipient's income tax matters as indirect evidence are not substantial factors bearing on his disability. Where income is not legally sufficient to *per se* indicate improved health, only the medical evidence and other direct evidence has a substantial bearing on the question of disability.

The slight income even when combined with other factors has no substantial bearing in view of the fact that the income producing activities in question were in the face of disability and were therapeutic. This vocational and rehabilitative therapy did not result after disability was removed but during the disability on a tenuous basis subject to interruption at any time for medical considerations and without dependence on such activities for livelihood. The medical and other direct substantial evidence indicates that Recipient was a virtual bed patient during the disputed period and was disabled as a matter of law for Social Security purposes. The substantial evidence just referred to also indicates that the insurance activities were medically approved on a trial basis only, purely incidental and subordinate to the purpose of possibly assisting recipient in removing his disability. The result is that later on in 1964 when Recipient finally recovered his health to the extent that his disability was removed, he was then able to engage in substantial gainful activities contributing to his self-sufficiency; and for this he should not now be penalized. Even if Recipient were a rich man, because he was otherwise entitled during the disputed period to disability benefits under the Social Security laws, they are still his.

Order granting Recipient's motion for summary judgment and denying the Secretary's motion for summary judgment is entered accordingly.