**TISCH FAMILY FOUNDATION, INC.,**
Plaintiff,

v.

**TEXAS NATIONAL PETROLEUM CO.,**
Defendant.

Civ. A. No. 2895.

United States District Court,
D. Delaware.

June 4, 1971.

David A. Drexler, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and William E. Wright, Houston, Tex., for plaintiff.

David F. Anderson, of Potter, Anderson & Corroon, Wilmington, Del., for defendant.

## FINDINGS OF FACT and CONCLUSIONS OF LAW

CALEB M. WRIGHT, Chief Judge.

This case was tried to the Court without a jury during September 1970. After extended post-trial briefing and oral argument, the matter is now ripe for decision. Based on the stipulations of counsel the documents and pleadings submitted and the admissible and credible evidence presented to the Court during the trial, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. The plaintiff, Tisch Family Foundation, Inc. ("the Foundation"), is a Florida corporation (Tr. 4) and the defendant, Texas National Petroleum Co. ("the Company"), is a dissolved Delaware corporation. (Tr. 16)

2. The amount in controversy exceeds $10,000 exclusive of interests and costs. (Tr. 21)

3. The Company filed a Consent to Dissolution on April 15, 1963, and the Delaware statute extends the life of the dissolved corporation for three years for the purpose of suing or being sued. (Tr. 16) This suit was filed within that period.

4. On January 1, 1960, the defendant Company and several underwriters entered into a Stock Warrant Agreement (Defendant's Exhibit 5) which provided that bearers of the Warrant Certificates were entitled to purchase the stated number of shares of the Company's Common Stock at varying prices per share up until 1975. The Warrant Certificates so stated. (Tr. 16–17, Plaintiff's Exhibit 2)

5. Paragraph 3(a) of the Stock Warrant Agreement provided in part as follows:

Warrants may be exercised at any time up to and including January 1, 1975, except that if notice has been given as provided in Section 8(c) in connection with a distribution in a liq-

uidation, dissolution or winding up of the Company, the right to exercise Warrants shall expire at the close of business on the third full business day before the record date specified in such notice. (Tr. 17)

6. Paragraph 8(c) of the Stock Warrant Agreement provides in part:

In the event the Company pays any dividend or makes any distribution upon its Common Stock (other than a dividend payable in Common Stock or in cash out of earnings or out of surplus legally available for dividends under the laws of the State of Delaware), or offers to the holders of its Common Stock for subscription or purchase by them any shares of stock of any class or any other rights, the Company shall mail or cause to be mailed to each of the Underwriters, each transfer agent and registrar for the Common Stock, and each registered holder of any of the warrants, at least thirty days prior to the record date or determination date hereinafter specified, a notice stating the record date fixed for the determination of holders of Common Stock entitled to receive such dividend, distribution or rights or, if no record date is fixed, the date as of which holders of Common Stock of record to be entitled to such dividend, distribution or rights are to be determined. (Tr. 17–18)

7. On or about May 9, 1962, the Company sent a notice and an enclosure to the holders of the Warrants advising them that the Board of Directors had approved a plan for the liquidation of the Company involving a sale of its assets, a distribution of the proceeds of this sale to the stockholders and a dissolution of the Company. (Defendant's Exhibit 6) The notice also advised the holders that if the liquidation and related matters were approved by the stockholders, the Company expected that the sale of assets would be consummated during the summer of 1962, and that in order to participate in the distribution thereafter Warrant holders would have to exercise their warrants and become stockholders pursuant to paragraphs 3(a) and 8(c) of the Warrant Agreement and that all unexercised warrants would expire at the close of business on the third full business day prior to the record date. (Tr. 18–19, 126–28)

8. The plan of liquidation and related matters were approved by the stockholders of the defendant Company on May 29, 1962. (Tr. 19)

9. On June 26, 1962, the Foundation, acting on the advice of a broker and through the offices of a brokerage house, purchased on the open market 80 Warrants of the Company, each of which carried the right to purchase 100 shares of the Company's Common Stock at a specified price depending on the date of exercise. The total cost of the Warrants, including a commission of $500, was $28,000. (Tr. 19–20)

10. Mr. Lawrence Tisch, President of the Foundation, and Mr. Richard Donovan, who was in charge of its records and operations, did not have actual notice of defendant's proposed dissolution prior to the record date nor did they have actual notice thereafter until early in 1964. (Tr. 38–9, 47, 215, 218, 231–32)

11. Based on the advice of the broker and a reading of the Warrant Certificate, Mr. Tisch and Mr. Donovan considered the Warrants a long range investment. (Tr. 32–33, 217–19, 230)

12. During July 1962 the defendant Company, acting as its own transfer agent issued to the plaintiff in care of Mr. Lawrence Tisch, and the plaintiff thereafter received (they came to Mr. Tisch who gave them to Mr. Donovan) 80 Warrant Certificates entitling plaintiff to purchase 8,000 shares of defendant's Common Stock. (Tr. 20, 31–32, 130, 216, Defendant's Exhibit 2)

13. The Warrant Certificates received by plaintiff did not state, nor did any other communication sent to the plaintiff by the defendant prior to October 31, 1962, state the facts concerning the impending dissolution and distribu-

tion of the Company's properties. (Tr. 170–79, 217, Plaintiff's Exhibit 2) ˙

14. On October 31, 1962, the defendant Company caused to be printed and mailed a certain number of notices to holders of the Warrants stating that November 30, 1962, had been fixed as the record date for determination of stockholders entitled to participate in the distribution and that Warrants not exercised on or before November 27, 1962, would expire "and will be of no value thereafter." (Tr. 150, Plaintiff's Exhibit 5)

15. On October 31, 1962, the Sorg Printing Company, at defendant's request, printed a number of notices to the holders of the Warrants and placed them in envelopes addressed and provided by defendant and metered 810 of said envelopes as to postage. (Tr. 127, 144–45, 150–51, Flaherty Deposition, Defendant's Exhibit 7)

16. No credible and admissible evidence was presented to the Court to establish the actual number of Warrant holders on October 31, 1962,[1] that an envelope addressed to plaintiff was stuffed with a notice, or that such a stuffed envelope was metered and/or mailed to plaintiff.

17. The employee of defendant responsible for the keeping of transfer records, the addressograph plates for the Warrant holders (including plaintiff),[2] and the running total of Warrant holders and who performed and/or supervised the addressing of the October 31, 1962, notices was one Mrs. Bobbie Goldberg, who did not testify. (Tr. 165–66, 190–93, 207–09)

18. Neither Mr. Lawrence Tisch nor Mr. Richard Donovan actually received the October 31, 1962, notice of record date which was alleged by defendant to have been mailed to plaintiff. (Tr. 38, 74–78, 217–18)

19. Had either Mr. Tisch or Mr. Donovan received the October 31, 1962, notice of record date prior to November 27, 1962, they would have and could have caused plaintiff to exercise its warrants. (Tr. 52–55, 218, Plaintiff's Exhibit 8)

20. The employee of plaintiff who would have initially received the October 31, 1962, notice if one were mailed to plaintiff per the aforementioned addressograph plate, was Mr. Tisch's secretary who would have, in the normal course of business, put the notice on Mr. Tisch's desk or given it to Mr. Donovan. (Tr. 75, 225–28)

21. Mr. Tisch's secretary at the approximate time of the mailing of the October 31, 1962, notices by defendant did not testify, but both Mr. Tisch and Mr. Donovan stated that nothing came to their attention to indicate that she had seen or received the notice of record date. (Tr. 231–33) The Court considers it extremely unlikely that Mr. Tisch's secretary might remember either receiving the notice or not receiving it; thus her testimony would not have been helpful and was not essential.

22. The parties have stipulated and the Court finds that if plaintiff had exercised its Warrants it would have received $32,295.20 during the distribution. This is the balance of what would have been plaintiff's *pro rata* share of the distributions after deducting for the

---

1. Both Mr. Anderson (Tr. 139–40, 155, 187) and Mr. Zubrod (Tr. 207–08) testified that they each had an independent recollection of the number of Warrant holders on October 31, 1962, but the Court could not believe this true in light of their demeanor and their use of the Flaherty Deposition to refresh their recollection. Mr. Anderson further said that Mrs. Goldberg told him the number of Warrant holders, but this is inadmissible hearsay. (Tr. 139)

2. A ledger card for plaintiff (Defendant's Exhibit 8) showing that it owned 80 Warrants was offered in evidence by defendant and bears an addressograph plate imprint of plaintiff's name and address identical to that on plaintiff's Warrant Certificates. (See Plaintiff's Exhibit 2) Similarly a list of the 32 Warrant holders who failed to exercise their Warrants which was compiled between November 27 and December 3, 1962, bears the same addressograph imprint of plaintiff's name. (Defendant's Exhibit 9)

$3.50 per share that plaintiff did not pay for the shares. (Tr. 21)

## CONCLUSIONS OF LAW

1. The Court has diversity jurisdiction of this action pursuant to 28 U.S.C. § 1332.

■ 2. Under the Delaware conflict of law rule, which the Court must apply in this diversity action, Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Prashker v. Beech Aircraft Corp., 258 F.2d 602, 605 (3rd Cir. 1958), Delaware corporation law governs the legal relationship between the defendant, a Delaware corporation and one of its security holders *qua* security holder, such as the Foundation.[3] See, e. g., Smith-Johnson Steamship Corp. v. United States, 231 F.Supp. 184, 186 (D.Del.1964).

3. The Foundation's tort theory that the Company's transferring of plaintiff's Warrants (as its own tranfer agent) and mailing out to plaintiff its Warrant Certificates without notifying plaintiff that liquidation had been approved and that a sale of assets and distribution was planned for the immediate future may be a valid theory of liability in that the defendant may have breached a duty owed to plaintiff under applicable state law. However, this breach of duty proximately caused no injury at all to plaintiff because only lack of knowledge of the record date could terminate the Warrants' value. Therefore, plaintiff's tort theory does not support recovery in this case.[4]

■ 4. The Foundation proved by a preponderance of the evidence that it did not receive the October 31, 1962, notice of record date allegedly mailed to it by defendant.[5] This proof also raises an inference that the notice was not properly mailed to plaintiff, IX Wigmore, Evidence § 2519(B)(b) at 432–33 (3rd ed. 1940), thus shifting the burden to the defendant to come forward with affirmative evidence that a notice was in fact mailed to plaintiff.[6] Employers' Liability Assurance Corp. v. Maes, 235 F.2d 918, 921 (10th Cir. 1956); Farmers Ins. Exchange v. Taylor, 193 F.2d 756, 759–760 (10th Cir. 1952).

■ 5. There is no legal or factual presumption that a corporate notice or other mail matter was mailed in fact. Paul v. Dwyer, 410 Pa. 229, 188 A.2d 753, 756 (Pa.1963). Mail which is properly addressed and mailed postage prepaid is presumed to be duly received by the addressee, but such a mailing must be proven in order to activate the presumption. Graham v. Commercial Cred-

---

3. Plaintiff argued a theory of tortious misrepresentation in regard to the defendant's sending the Warrant Certificates to plaintiff in July 1962 without advising plaintiff that a liquidation had been approved. Normally, the law of the place of the tort applies in Delaware. Friday v. Smoot, 211 A.2d 594, 595 (Del.1965), but since the Court here decides that plaintiff's novel tort theory is without merit under any arguably applicable state law, the conflict rule applicable to it need not be decided.

4. As plaintiff has stated to the Court, no question of federal securities law was presented to the Court in this action. (Tr. 11) Plaintiff argued that either New York or Texas law is applicable to this tort theory.

5. The Warrant Agreement requires only mailing of the notice of record date, not receipt by the Warrant holder. Defendant's evidence that it sent notices to plaintiff's broker in this transaction cannot meet this requirement. See, Bryan v. Western Pacific Railroad Corp., 28 Del.Ch. 13, 35 A.2d 909, 915 (1944).

6. It may be that a party always has the burden to prove notice when it is alleged as a defense to liability. 39 Am.Jur., Notice and Notices § 32 at 251–52. The Court's researches have revealed no Delaware cases on this point, nor have the parties cited any. Defendant cites Willdel Realty, Inc. v. New Castle County, 270 A.2d 174, 176 (Del.Ch.1970), but the language referred to has import only in regard to proof of lack of statutory notice of a meeting of a public body.

it Corp., 194 A.2d 863, 865–866 (Del. Ch.1963), aff'd 41 Del.Ch. 580, 200 A.2d 828, 16 A.L.R.3rd 1009 (Del.1964); Szczesny v. Vasquez, 71 N.J.Super. 347, 177 A.2d 47, 50–51 (1962); 31A C.J.S. Evidence § 136a at 287–290, § 136e at 298–301.

6. The testimony of Mr. Zubrod and Mr. Anderson and the deposition of Mr. Flaherty were insufficient when taken together to prove by a preponderance of the evidence that in regard to the crucial October 31st notice an envelope was addressed to plaintiff, that such an envelope was stuffed with a notice of record date, that such a stuffed envelope was metered as to postage or that such an addressed, metered and stuffed envelope was placed in the mail. Each of these elements is required in order to prove that the critical notice was mailed to plaintiff. I Wigmore, Evidence § 95 at 524; 31A C.J.S. Evidence § 136c. Much of the circumstantial evidence that was offered on these points was inadmissible [7] and/or found incredible by the Court.[8]

7. Since the defendant breached its contractual duty to plaintiff to provide it with notice of the November 30, 1962, record date to plaintiff's detriment, the defendant is liable to plaintiff for the full amount of the stipulated damages, $32,295.20.

Submit order and judgment in accordance herewith.

---

7. Plaintiff raised a number of valid best evidence and hearsay objections to testimony by Mr. Zubrod and Mr. Anderson as to the number of Warrant holders on October 31st, the number of envelopes sent to the printing company, and Mr. Flaherty's testimony that the stuffed envelopes were mailed. Plaintiff also registered valid hearsay objections to testimony concerning the knowledge of Bobbie Goldberg, the defendant's employee in charge of transferring stock and warrants and otherwise keeping the securities records for defendant and actually supervising the addressing of the envelopes etc.

Defendant relied on the business custom or usage presumption, but clearly this presumption was not applicable in the absence of any testimony by Bobbie Goldberg or by the person who actually mailed the notices. 31A C.J.S. Evidence § 136c at 294–295.

8. The Court did not believe the testimony of Mr. Anderson and Mr. Zubrod that they had an independent recollection of the number of Warrant holders on October 31, 1962, under the circumstances of this case. (Tr. 136–140, 155, 187, 207–08)