Mary **CUCUZZELLA** for Lee J.
Cucuzzella, Plaintiff,

v.

Caspar **W. WEINBERGER,** Secretary of
Health, Education and Welfare,
Defendant.

Civ. A. No. 74–209.

United States District Court,
D. Delaware.

June 17, 1975.

Jeffrey S. Goddess, Tybout & Redfearn, Wilmington, Del., for plaintiff.

Alan J. Hoffman, Asst. U. S. Atty., Wilmington, Del., Stephanie W. Naidoff, and Roland L. Vaughan, Jr., Dept. of H. E. and W., Philadelphia, Pa., for defendant.

## OPINION

STAPLETON, District Judge:

This is an action brought under 42 U. S.C. § 405(g) for review of a decision of the Secretary of Health, Education and Welfare determining that plaintiff's son, Lee Cucuzzella, ceased to be entitled to disability payments under the Social Security Act as of July 1967, and that ben-

efits paid between that date and December 1971, amounting to $6,400.70, must be returned to the government. Plaintiff disputes both of the Secretary's conclusions. The matter is now before me on the Secretary's motion for summary judgment. For the reasons which follow, I conclude that the Secretary's determination as to eligibility must be sustained, but that his decision to require repayment of benefits must be vacated and remanded.

In this proceeding, I am bound by the statutory stricture that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence" has been interpreted to mean "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 38 L.Ed.2d 842 (1971).

## I. *ELIGIBILITY.*

Certain things are not in dispute. In June 1963, shortly before his 18th birthday, Lee Cucuzzella was severely injured in an automobile accident and became eligible for child's insurance benefits under his deceased father's Social Security account. 42 U.S.C. § 402(d)(1)(A), (B)(ii), (C)(ii). Such eligibility terminates at the end of the second month following the month in which the disability ceases. 42 U.S.C. § 402(d)(1) (G). "Disability" is defined in 42 U.S.C. § 423(d). As pertinent here, it means an "inability to engage in any substantial gainful activity" as that phrase is further defined by regulation. The regulations provide in part that:

An individual's earnings from work activities averaging in excess of $140 a month shall be deemed to demonstrate his ability to engage in substantial gainful activity unless there is affirmative evidence that such work activities themselves establish that the individual does not have the ability to engage in substantial gainful activity under the criteria in [other regulations].

20 C.F.R. § 404.1534(b).

The statute provides an exception to this rule, in the form of a "period of trial work." 42 U.S.C. §§ 423(d)(4); 422(c). During this period, which encompasses an individual's first nine months of work (whether or not consecutive) after becoming disabled, his services are "deemed not to have been rendered . . . in determining whether his disability has ceased in a month *during* such period." § 422(c)(2) (emphasis added). These services may, however, be considered in determining whether his disability ceased thereafter. 20 C.F.R. § 404.1536(a).

### A. *Cessation.*

After some recovery, Lee began to work in August 1966, and had completed nine months of work by May 1967. (Tr. 19). His average earnings during that period were in excess of $140 per month. (Tr. 20, 60, 160). The Administrative Law Judge, whose decision, summarily approved by the Appeals Council, "stands as the final decision of the Secretary" (Tr. 4), found that the work Lee performed was not "sheltered" or "made work" (Tr. 20), and concluded, based on the regulatory presumption quoted above, that Lee's disability had ceased as of the end of his trial work period. (Tr. 24).

Plaintiff agrees that Lee's second job, lasting from February 1967 through May of that year, was substantial gainful activity, but contends that the first job was not. Plaintiff asserts that the evidence shows that Lee's first employer drove him to and from work, and that he was laid off after five and one-half months because of inability to perform satisfactorily. I cannot, however, find any testimony to that effect

anywhere in the record.[1] There is, on the other hand, testimony by the plaintiff and by her son, Vincent Cucuzzella, that Lee's first job was necessary to the operation of his employer's business, that the establishment did not specialize in hiring handicapped people, that Lee worked a regular forty hour week, and that he lost little time from the job. (Tr. 60–61, 81). There is also evidence that he left voluntarily. (Tr. 162).

■ Plaintiff also contends that "uncontradicted medical evidence" rebuts the presumption of non-disability arising out of Lee's $140 per month earnings. But this misconstrues the applicable regulations, which provide that the presumption is rebuttable only by "affirmative evidence that such *work activities themselves* establish that the individual does not have the ability to engage in substantial gainful activity . . . ." 20 C.F.R. § 404.1534(b) (emphasis added). The presumption cannot be rebutted by medical evidence alone, however undisputed.[2] *Resnikoff v. Gardner*, 290 F.Supp. 638 (N.D.Fla. 1968), and *Shutt v. Secretary of H.E.W.*, 490 F.2d 43 (5th Cir. 1974), cited by plaintiff, are not to the contrary. Both cases involve situations in which the claimant's work activities *themselves* evidenced an inability to engage in substantial gainful activity. In *Resnikoff*, the undisputed facts showed that the claimant had conducted his "meager activities" while "a virtual bed patient," and that the work was "medically ap-

proved on a trial basis only, purely incidental and subordinate to the purpose of possibly assisting recipient in removing his disability." 290 F.Supp. at 641. In *Shutt*, the evidence was that the claimant had held six jobs in twenty months and that he had left the first five involuntarily because of his inability to do the work or because of his medical record, and left the sixth because of another injury. The Court of Appeals remanded because of the Secretary's failure to consider the "[s]erious questions . . . evident as to whether Shutt's *employment history* affirmatively demonstrates his inability to engage in substantial gainful activity." 490 F.2d at 47 (emphasis added). As I have noted above, this sort of evidence is not present in this case.

I conclude that the Secretary properly applied the standards of Regulation 404.1534(b), and that his finding that Lee Cucuzzella's disability ceased in May 1967 is supported by substantial evidence.

### B. Recurrence.

■ Plaintiff also raises the issue of whether Lee's disability recurred during the period for which the Secretary now seeks recovery of benefits—August 1967 through December 1971—or thereafter. Plaintiff first asserts that the Secretary made no specific finding as to this period, but this ignores the Administrative Law Judge's Finding No. 1: "The claimant's disability ceased in May 1967

---

1. If plaintiff's contention were supported by the evidence, she would be entitled at least to a remand for administrative consideration of her case in light of regulations §§ 404.-1532(d) and 404.1534(a) which provide, in effect, that failure to perform work satisfactorily, or inability to hold a job, will make the earnings test of regulation § 404.1534(b) inapplicable. See *Shutt v. Secretary of H. E. W.*, 490 F.2d 43 (5th Cir. 1974).

2. Prior to 1968, the law was as plaintiff would have it, at least in the Fourth and Fifth Circuits. See *Hanes v. Celebrezze*, 337 F.2d 209 (4th Cir. 1964); *Leftwich v.*

*Gardner*, 377 F.2d 287 (4th Cir. 1967); *Flemming v. Booker*, 283 F.2d 321 (5th Cir. 1960). But the Administration resisted this interpretation, and Congress overruled these cases in the 1967 amendments to the Act. See *Wilson v. Richardson*, 455 F.2d 304 (4th Cir. 1972). Section 223(d)(4), as amended in 1967, provides that, notwithstanding the usual tests for disability (i. e., the medical evidence and the claimant's age, education and work experience) an individual whose services or earnings exceed standards to be set by the Secretary shall be found not to be disabled. 42 U.S.C. § 423(d)(4).

. . . and his disability did not continue thereafter . . . ." (Tr. 24).

Plaintiff next contends that "some [opportunity] must be afforded to the plaintiff to litigate [Lee's] status between 1967 and 1971 before the Court can affirm a finding that all benefits paid during that period had been tendered incorrectly." I agree with this statement, but I find that plaintiff had such an opportunity before the Administrative Law Judge. In his opening statement at the hearing, the judge said:

> You should be prepared to prove that Lee J. Cucuzzella, the claimant, continued to be under a disability as the same is defined in the Social Security Act after August of 1967 down to and including the present time.
>
> The general issue before me is whether or not the claimant's disability ceased, and if so, when it ceased. [Tr. 40].

During the hearing, testimony was taken and exhibits received which bore upon Lee's status after July 1967. The evidence showed that he had been productively employed for 56 of the 76 months between August 1967 and the hearing date. (Tr. 59, 63–80, 149). He did leave nine different jobs in that six-and-a-quarter year period, and Vincent Cucuzzella testified that "[w]e believe the termination in most cases was the result of his disability." (Tr. 76). But no other evidence was produced in support of this assertion, though the Administrative Law Judge specifically noted this lack during the hearing and asked if plaintiff wanted time to obtain supporting statements from any of Lee's employers. Plaintiff did not. (Tr. 90–91, 98).

Many of Lee's jobs lasted for substantial periods of time (Matthews Bros.—11 months; Wilmington Dry Goods—14 months; American Life Insurance Co.— 20 months; Hanover Shoes—5 months, continuing at the time of the hearing),

and all paid substantially more than $140 per month; no single period of unemployment lasted longer than four months. Based on this record, the Secretary's finding that Lee Cucuzzella's disability did not continue after May 1967 is also supported by substantial evidence.

## II. *REPAYMENT.*

The Social Security Act provides that "whenever the Secretary finds that more . . . than the correct amount of payment has been made to any person . . . the Secretary shall . . . require such overpaid person . . . to refund the amount in excess of the correct amount . . . ." 42 U.S.C. § 404(a). However, "there shall be no . . . recovery by the United States from, any person who is without fault if such . . . recovery would defeat the purpose of [Title II of the Act] or would be against equity and good conscience." 42 U.S.C. § 404(b).

The Administrative Law Judge found that the plaintiff here was not without fault in accepting and retaining overpayments, and that recovery would neither defeat the purpose of the Act nor be against equity and good conscience. (Tr. 21–24).

### A. *Fault.*

By regulation, the Secretary has set out criteria which will be applied in determining whether an individual was "without fault" in accepting benefits. "[A]ll pertinent circumstances, including . . . . age, intelligence, education, and physical and mental condition" are to be considered. 20 C.F.R. § 404.-507. Fault may be found if the overpayment resulted from one of three things:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or

(c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect. [*Id.*]

In his brief, the Secretary seems to argue that plaintiff [3] was at fault for failing to report Lee's work activity after April 1968, a category (b) situation. But the Administrative Law Judge did not rest his finding of fault on that category.[4] His finding that plaintiff "either knew or should have been expected to know that such overpayments were incorrect" (Tr. 24) puts this case under category (c).

■■ The Administrative Law Judge supported his conclusion with two arguments: *First,* that although a letter from the Social Security Administration dated January 3, 1967 "fully explained the trial work period" to plaintiff the "claimants for reasons of their own or based on very skimpy reasons elected to ignore such information. . . ." (Tr. 22); and *Second,* that Lee "was working on a fairly regular basis and getting substantial wages" during the period from August 1967 to December 1971, and that this alone "should have alerted" plaintiff that he was not entitled to benefits. (*Id.*) These findings and conclusions are not supported by substantial evidence in the record.

■■ The letter of January 3, 1967 (Tr. 118)[5] does not support the Administrative Law Judge's interpretation of its contents. Indeed, rather than providing a basis for the conclusion that the Cucuzzellas should have known that Lee's benefits were to terminate at the end of his trial work period, this letter, in the context of the events in this case, provides a basis for the conclusion that the Cucuzzellas had no reason to suspect that anything was amiss when Lee's benefits continued to arrive. The crucial second paragraph of this letter states:

According to the information reported to us, it appears your 9th month of trial work will be April 1967. At that time your social security district of-

---

3. There is considerable confusion in the record as to just whose conduct the Administrative Law Judge viewed as relevant to the various issues involved in this case. He discussed the "without fault" criteria as if it was the joint and several conduct of Mary, Lee, and Lee's brother, Vincent, that was relevant (see Tr. 22). Section 204(b) of the statute and Section 404.507 of the Regulations would appear to make only Mary's conduct relevant in the present context. The distinction is probably not material, however, since the record suggests that each of the three Cucuzzellas was in basically the same position as far as knowledge of the relevant facts was concerned.

4. The Administrative Law Judge made no factual finding that information which Mary Cucuzzella knew or should have known to be material was not furnished.

5. The Cucuzzellas testified that they did not recall ever having received this letter, but the Administrative Law Judge found that they had received it, based on "the presumption that [it] was received . . . in the due course of the mail." (Tr. 19). Plaintiff argues that the mere existence of a properly addressed carbon copy in the Administration's files is not a sufficient basis to trigger this presumption. While it is true that general statements of the presumption refer to evidence of addressing, stamping and mailing (see 9 Wigmore, *Evidence* § 2519 (3rd ed. 1940) ; McCormick, *Evidence* § 343 (2d ed. 1972) ; *Tisch Family Foundation, Inc. v. Texas National Petroleum Co.*, 326 F.Supp. 1128, 1132–33 (D.Del. 1971)), the rules of evidence are relaxed in this administrative proceeding, 42 U.S.C. § 405(b) ; *Mattern v. Weinberger*, 519 F.2d 150 (at 168) (3rd Cir., 1975), and the so-called "residuum rule," which requires that an administrative finding be supported by some technically competent evidence, is not the law in social security cases. *Richardson v. Perales*, 402 U.S. 389, 402, 91 S. Ct. 1420, 38 L.Ed.2d 842 (1971) ; see 2 K. Davis, *Administrative Law Treatise* §§ 14.10, 14.11 (1958; Supp. 1970). It was not improper for the Administrative Law Judge to find that the letter had been received based on the copy in the files and his judicial knowledge that an administrative agency usually mails its mail. This was enough evidence for "a reasonable mind to accept as adequate to support" his conclusion. *Richardson v. Perales, supra,* at 401, 91 S.Ct. 1420; *cf. United States v. Vandersee*, 279 F.2d 176, 180–81 (3rd Cir. 1960) ; *Myers v. Moore-Kile Co.*, 279 F. 233 (5th Cir. 1922).

fice will get in touch with you to obtain information about the nature of your work and the amount of your earnings. Your case will then be reviewed to see whether you are still disabled within the meaning of the law. *If it is determined that you are, your benefits will be continued.* If, however, it is determined you are not, you will receive 3 additional months [sic] benefits after the end of your trial work period. [Tr. 118; emphasis added.]

Because of a month's unemployment, Lee's trial work period did not end until May 1967. In August 1967 he was contacted by a representative of the Administration who "obtain[ed] information about the nature of [his] work and the amount of [his] earnings" as predicted in the January 3 letter. (Tr. 139–144). Based on this contact, the Administration apparently determined that Lee's disability had ceased as of May 1967. (Tr. 120). But the Cucuzzellas were not informed of this determination until July 1972. (Tr. 88). All they knew prior to that time was that Lee's benefits continued to arrive every month. (Tr. 87). Since the January 3rd letter had stated that "If it is determined that you are [still disabled], your benefits will be continued," the obvious conclusion for them to draw was that the Administration had determined that Lee was still disabled. And the longer the benefits kept coming, the less reason they had to suspect that anything was wrong.[6]

This conclusion is bolstered by the evidence of a conversation which may have occurred between Lee and a Social Security employee. Lee testified that when he went to the Wilmington office of the Administration in April, 1968, the claims representative with whom he

spoke told him that he was considered permanently disabled, and would continue to receive benefits but did not have to report his employment in the future. (Tr. 92–95). Lee's mother and brother both testified that he had reported this conversation to them within a short time after it occurred (Tr. 65–68, 83–86), at a time when he would have had no reason to manufacture such a story. It is undisputed that Lee's work activity had been faithfully reported to the Administration up to that time, but was not reported thereafter. (Tr. 93, 96). All these *circumstances* tend to show that this conversation did take place, and there is nothing in the record to the contrary.

Yet the Administrative Law Judge gave no weight at all to this evidence, apparently on the grounds that "even if such a person had made such a statement . . . [it] would not have bound the . . . Administration because it was an incorrect statement of what the law was . . . ." (Tr. 22). In taking this position, he ignored the most relevant Regulation, 20 C.F.R. § 404.510a, which provides in part that:

> Where an individual or other person on behalf of an individual accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration . . . with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto, such individual, in accepting such overpayment, will be deemed to be "without fault."

While the statement made to Lee by the claims representative may not have been strictly speaking "information . . . with respect to the in-

---

6. Cf. 20 C.F.R. § 404.510: ". . . an individual will be considered 'without fault' in accepting a payment which is incorrect . . . if it is shown that such . . . acceptance . . . was due to one of the following circumstances: . . . (g) The continued issuance of benefit checks to him

after he sent notice to the Administration of the event which caused or should have caused the deductions provided that such *continued issuance of checks led him to believe in good faith that he was entitled to checks subsequently received.*" (emphasis added).

terpretation of [the] Act or regulations," the spirit of this regulation is that good-faith reliance on information obtained from the Social Security Administration ought at least to be considered in determining whether an individual acted "without fault." This was not done here.[7]

The Administrative Law Judge's second reason for finding plaintiff to be not without fault is also deficient for failing to take into account a number of relevant factors. His reasoning was that because the Cucuzzellas were intelligent people and knew that Lee was working on a fairly regular basis for substantial wages, they were negligent in failing to realize that he was not entitled to disability benefits.[8] (Tr. 22).

The regulations dealing with repayment presuppose that there will be situations in which improper payments are received and retained and the recipient is nevertheless not at fault. Accordingly, it is clear that recipients are not always to be deemed to have knowledge of the law or to be charged with negligence for failure to know it. Rather, all the surrounding circumstances must be taken into account before a finding of negligence can properly be made. In this particular factual situation, I believe there are a number of factors that the Administrative Law Judge should have considered in this context but did not.

First, the state of the law in 1967 should have been taken into account. "Disability" in the Social Security context is a term of art and, as the Administration's letter of January 3, 1967 stressed, the question at the end of the trial work period was whether Lee was "still disabled *within the meaning of the law.*" (Emphasis added). Before the adoption of the "1967 Amendments" to the Social Security Act in January of 1968, Section 223, 42 U.S.C. § 423, provided that:

> (2) The term "disability" means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration. . . .

Under this formulation, the prevailing view appears to have been that an individual who managed to work despite a medically provable disability *was* eligible for benefits even if he was earning substantial wages. See *Flemming v. Booker,* 283 F.2d 321, 323 (5th Cir. 1960); *Hanes v. Celebrezze,* 337 F.2d 209 (4th Cir. 1964); *Leftwich v. Gardner,* 377 F.2d 287, 290 (4th Cir. 1967); *Kennedy v. Richardson,* 454 F.2d 376, 378 n. 4 (3rd Cir. 1972) (applying pre-1968 law).

---

7. Alternatively, the Administrative Law Judge may have disregarded this evidence because he felt that plaintiff had not established with a sufficient quantum of proof that the conversation had occurred. His opinion can be read to reflect such a view. (See Tr. 22). If this was a basis for his conclusion, it was an incorrect application of the law. The Cucuzzellas' testimony, if believed, was certainly a sufficient basis for a finding that a conversation of this character took place. There is no requirement, as the Administrative Law Judge seems to suggest, that their testimony be corroborated. Since there is no evidence in the record to the contrary, the only justifiable basis for concluding that this conversation did not occur would be a determination by the Administrative Law Judge that the Cucuzzellas' testimony is unworthy of belief. Thus far, he has not made such a finding. In considering whether such a finding should be made on remand, he may wish to take into account the state of the law in 1967–68, as discussed in text below.

8. The Administrative Law Judge did not find that any of the Cucuzzellas in fact realized that Lee was not entitled to the checks received. The Cucuzzellas testified that they thought Lee *was* entitled to these benefits (Tr. 64–68, 84–85, 96–97), and the Administrative Law Judge seems to have accepted their testimony. He assured them at the end of the hearing that he saw no indication of "an overt attempt at defrauding the government" (Tr. 97; correcting typographical error), and he made no finding that anyone had acted in bad faith.

Congress, however, clarified the matter in 1968 by adding Section 223(d)(4), 42 U.S.C. § 423(d)(4), which provides that:

The Secretary shall by regulations prescribe the criteria for determining when services performed or earnings derived from services demonstrate an individual's ability to engage in substantial gainful activity. Notwithstanding the provisions of paragraph (2) [relating to medical evidence and other indicia of disability], an individual whose services or earnings meet such criteria shall . . . be found not to be disabled.

And see *Wilson v. Richardson*, 455 F.2d 304, 306–07 (4th Cir. 1972).

In considering the issue of plaintiff's fault, the Administrative Law Judge appears to have treated the law established by the 1967 Amendments as being the clearly applicable law at the time when he found the Cucuzzellas should have realized Lee was receiving a windfall. This would be of significance given the record evidence regarding Lee's condition. Lee was concededly disabled prior to January 1967, and in light of the evidence that he continued to suffer some medically provable physical impairment thereafter, and that there was no sudden improvement in his condition (Tr. 21, 98–99, 172), plaintiff may well have had an adequate basis for believing that, under the pre-1968 view of the law, Lee was properly considered "disabled" despite his employment and earnings.

Lee received his last uncontested benefit payment in July 1967, five months before the 1967 Amendments were enacted.[9] Absent a finding that Lee was not "disabled" under the law as it appeared to be prior to January 1968, it is difficult to see how plaintiff can be charged with negligently failing to realize the impropriety of the payments during that period. And as to the period after January 1968, the Administrative Law Judge should have considered whether plaintiff can be found to have been negligent in the absence either of evidence that the change in the law was brought to her attention, or of evidence that there was a sudden change for the better in Lee's condition.

In addition to the state of the law in 1967 and Lee's physical condition at that time, I believe that a finding of negligence could not properly be entered without considering two aspects of the January 3, 1967 letter. First, the letter's explanation of the trial work period conveyed to the reader by necessary implication that the existence of compensated employment was not necessarily inconsistent with "disability" within the meaning of the law. Second, the letter advised plaintiff that the Administration would itself make the determination of whether Lee remained "disabled" and would discontinue benefits if disability had ceased.[10]

Finally, it is conceded that the Administration was supplied with information about Lee's employment status up

9. Section 158(e) of Public Law No. 90–248 provided for the retroactive application of this amendment to Section 223. Thus the current statute was properly applied to the merits of Lee's disability claim by the Administrative Law Judge and in Part I of this Opinion. But for the purpose of determining whether an individual acted without fault in 1967, the relevant law must, of course, be the law then in effect.

10. There is a third statement in the letter worth noting. As quoted above, the letter states that "If . . . it is determined that you are not [disabled], you will receive three additional months [*sic*] benefits after the end of your trial work period." Lee's

trial work period ended in May 1967, see *ante* note 6., page 1294 but the Secretary here seeks recovery of benefits paid beginning in August 1967, the third month thereafter. This position is supported by the statute, 42 U.S.C. § 402(d)(1), which provides that benefits shall end "with the month preceding . . . the third month following the month in which" the disability ceases. However, as to the benefit payment received for August 1967, I do not see how the Administrative Law Judge can make any finding but that its receipt and retention was without fault on plaintiff's part, based on the contents of this official letter which he found she had received.

through April 1968. If after submitting this information Lee was informed by an employee of the Administration that he had been determined to be permanently disabled, this would cast a different light on the question of whether Lee's employment should have put plaintiff on notice that Lee was not entitled to disability benefits.

Thus on remand, the Administrative Law Judge should determine whether the conversation of April of 1968 did in fact occur and, if it did, give it due weight in determining whether plaintiff was at fault. He should also consider the contents of the letter of January 3, 1967 and the state of the law during the relevant period.

### B. *Defeat The Purpose Of Title II.*

 The factors to be considered in determining whether recovery of an overpayment would defeat the purpose of Title II of the Social Security Act are set out in the Regulations at 20 C.F.R. § 404.508. Subsection (b) thereof provides that:

> Adjustment or recovery will defeat the purposes of title II in (but is not limited to) situations where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses.

The Administrative Law Judge found that Mary Cucuzzella's monthly income while Lee was working was $630, and that her monthly expenses were $552, exclusive of $3,500 in annual college expenses for Lee's sister, Joanne. When Lee is not working, he found, Mary must withdraw money from her savings in order to meet living expenses. She had assets consisting of a $9,000 savings account, a $6,500 investment fund, a home, free and clear, with a market val-

ue of approximately $15,000, and a car worth about $800. Based on these figures, he found that the family had "sufficient assets so that they can meet the ordinary and necessary living expenses . . .. The family would not be deprived of the ability to meet regular living expenses if they were compelled to repay this money." (Tr. 23).

After carefully searching the record, I cannot find evidence to support some of the income and expense figures found by the Administrative Law Judge.[11] Given this fact and the necessity for remand on other grounds, I request that the Administrative Law Judge clarify his findings and analysis on this point.

### C. *Equity And Good Conscience.*

An alternative justification for the waiver of recovery is that repayment would be "against equity and good conscience." 42 U.S.C. § 404(b). The Secretary's regulations provide two distinct bases for such a determination, of which only the first, 20 C.F.R. § 404.509, was considered by the Administrative Law Judge.

The other regulation relevant to this issue is 20 C.F.R. § 404.512(a), which provides that:

> In the situations described in § . . . 404.510a, adjustment or recovery will be waived since it will be deemed such adjustment or recovery is "against equity and good conscience."

Section 404.510a is the regulation, previously quoted, which deals with reliance on "erroneous information [obtained] from an official source within the Social Security Administration." See *ante.* p. 1294. Since the Administrative Law Judge disregarded the evidence of Lee's April 1968 conversation, he did not consider the applicability of this regulation. On remand, its relevance in this context should also be considered if

---

11. Nor, apparently, could the Secretary. Plaintiff's brief questioned the record's support for these findings (Br. 40–41), but the Secretary's brief did not respond to this point (Br. 22–23). The Administrative Law Judge stated that these figures were "Based on testimony given by Mary Cucuzzella" (Tr. 23), but I simply cannot locate any testimony whatsoever on this subject.

the Administrative Law Judge finds that the conversation occurred.

A few comments on the application of the regulation the Administrative Law Judge did consider relevant are also appropriate here. That regulation, 20 C. F.R. § 404.509, provides that:

> "Against equity and good conscience" means that adjustment or recovery of an incorrect payment . . . will be considered inequitable if an individual, . . . by reason of the incorrect payment, relinquished a valuable right . . . or changed his position for the worse . . .. In reaching such a determination, the individual's financial circumstances are irrelevant.

The Administrative Law Judge stated:

> There is no showing here that the claimants relied to their detriment on the overpayment. In fact the money was merged with the common funds of the claimants and used for ordinary living and medical expenses which did not cause any dramatic change in the claimant's position. [Tr. 24].[12]

■ If the Administrative Law Judge believed that a change of position must be "dramatic," and cannot occur if the payments received are "merged with the common funds" of the household, he misunderstood the meaning of this regulation. As the regulation's *example 4* shows, the change of position may be quite minor, as long as it involves an expenditure which would not have been made but for the incorrect benefit payment. And, money being fungible, if the benefits received are merged with common funds, but other money is spent in a way in which it would not have been but for the receipt of the benefits, the reliance standard of the regulation will be satisfied. Thus, if Joanne's attendance at college was made possible only by the benefits which had been received for Lee, the criteria of § 404.509 may well have been met.[13] The Administrative Law Judge made no finding in this regard.

### III. *CONCLUSION.*

I thus affirm the Secretary's findings that Lee Cucuzzella's disability ceased in May 1967 and did not resume thereafter, and that the payments made on his behalf after July 1967 were incorrect. I vacate his findings that plaintiff was not without fault in accepting and retaining those payments and that repayment of such benefits at this time would neither defeat the purpose of Title II of the Social Security Act nor be against equity and good conscience. The case is remanded for the additional findings of fact and for the application of the correct standards of law specified in this Opinion.

Submit order.

---

12. The apparent confusion between singular and plural claimants is the Administrative Law Judge's, not the Court's. See n. 3, *ante*, p. 1293.

13. Cf. Regulation 20 C.F.R. § 404.509, *example 3*:

> A widow having been awarded benefits for herself and daughter, entered her daughter in college because the monthly benefits made this possible. After the widow and her daughter received payments for almost a year, the deceased worker was found to be not insured and all payments to the widow and child were incorrect. The widow has no other funds with which to pay the daughter's college expenses. Having entered the daughter in college and thus incurred a financial obligation toward which the benefits had been applied, she was in a worse position financially than if she and her daughter had never been entitled to benefits. In this situation, the recovery of the incorrect payments would be inequitable.

The Secretary argues that Lee's benefits "were certainly not designed to enable plaintiff to meet her daughter's college expenses. Indeed, if plaintiff has applied the disability payments made on behalf of her son to her daughter Joanne's college expenses, she has done so improperly . . . ." (Br. 23–24). But this misses the point. The question is not whether Lee's benefits were used for Joanne, but whether it is only because Lee's benefits were available to use for his needs that Mary was able to use her other resources on Joanne's behalf.