**Angelina PRIOLO, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. 85 CV 2036.**

United States District Court, E.D. New York.

July 31, 1986.

---

Chadbourne & Parke, New York City by William M. Bradner, Jr., for plaintiff.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Patricia Galvin, Asst. U.S. Atty., for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This is an action brought under section 205(g) of the Social Security Act, as amended (the "Act"), 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health and Human Services (the "Secretary"), which found that plaintiff had been paid excess mother's insurance benefits, 42 U.S.C. § 402(g) ("mother's benefits"), by the Social Security Administration ("SSA"), and denied her a waiver of recovery of the overpayment.

In 1981, the plaintiff was notified by the SSA that between December 1967 and November 1980, she had received over-payment of mother's benefits in the amount of $17,248.20 (Transcript of Administrative Proceedings ("Tr.") 71–73). The amount of the overpayment was reduced to $5005.60 because of underpayments of wife's benefits paid to her on the account of her second husband (Tr. 71). Plaintiff's request for a waiver of the overpayment was denied, and the denial was upheld on reconsideration on April 1, 1983 (Tr. 97–100).

The plaintiff then requested a hearing, which was held on August 25, 1983 (Tr. 30–48). The Administrative Law Judge ("ALJ") before whom plaintiff and her paralegal representative appeared considered the case *de novo*. On July 6, 1984, he decided that there had been an overpayment in the amount of $17,248.20, which was reduced to $7,114.20 after underpayments and withholdings were deducted. He also decided that recovery of the overpayment could not be waived because the plaintiff was not without fault in causing it (Tr. 22–26). The decision of the ALJ became the final decision of the Secretary when it was approved by the Appeals Council on March 29, 1985 (Tr. 4–5).

## Facts

Plaintiff Angelina Priolo is a sixty-nine year old widow who lives with and cares for her only child, forty year old Joseph Sebastiano, at their Brooklyn home. Joseph is the son of the plaintiff and her first husband, Anthony Sebastiano, who died in 1957 (Tr. 7–10, 59). Joseph requires full-time care because he is emotionally and mentally retarded and retains no bowel or bladder control.

Mrs. Priolo's case is complicated. After the death of her first husband, she applied for and received mother's benefits beginning in 1957, based on her deceased husband's account. Her son received child survivor's benefits and disability benefits, also drawn on his father's account. Both mother's and child's survivor benefits were terminated in 1963 (Tr. 53), when Joseph reached the age of eighteen. That year, too, Joseph was hospitalized—with his mother's reluctant consent—after several suicide attempts. He remained hospitalized, with brief, temporary exceptions, until 1973 (Tr. 128).

In 1967, four years after Joseph's hospitalization, the plaintiff married Louis Priolo (Tr. 119). She did not report the remarriage to the SSA. Mrs. Priolo testified that in 1973, an SSA worker whose name she cannot recall told her that if she were to care for her son at home, and if she stopped working, she could again receive mother's benefits (Tr. 37, 42, 81). Relying on this erroneous information, the plaintiff left her job and reapplied for the benefits. On the application form, she used the last name "Sebastiano," the name of her son, Joseph, for whom she was caring and of the father from whose account the benefits

would be drawn (Tr. 54). Where the application asked for information on her "last marriage," she referred to her "prior file" (Tr. 54).

Thus, the SSA did not learn of the plaintiff's 1967 remarriage—an event that would have terminated her mother's benefits according to 20 C.F.R. § 404.341(b)(3)—until 1980, when her second husband died. According to the plaintiff, she returned his retirement check to the Administration the month he died, and "all [her] troubles started" (Tr. 81). The government claims that it learned of her new marital status when she applied for benefits from her second husband's account.

The SSA claims that the plaintiff was at fault in not reporting her remarriage in 1967 (when she remarried), or in 1973 (when she reapplied for mother's benefits), and thus caused the alleged overpayment herself. The ALJ agrees. The ALJ and the SSA do not concur, however, on either the time period or the amount of the alleged overpayments. A Social Security Administration notice of October 1981 states that the plaintiff was overpaid $17,248.20 from December 1967 through November 1980, with the debt reduced to $5,005.60 by deducting underpayments from Mr. Priolo's account (Tr. 71). In 1983, the SSA reviewed the records and found that the plaintiff was paid benefits "for June 1970 through August 1970, and from July 1973 through November 1980" (Tr. 100). The SSA conceded that the plaintiff had not been paid benefits from 1967 to 1969. Nevertheless, the SSA still thought she had been overpaid $17,248.20. After subtracting underpayments and withheld payments, the SSA determined that Mrs. Priolo now owed $7,100.80 (Tr. 99).

The ALJ's finding is even more confused. The ALJ first finds that Mrs. Priolo was "not entitled to benefits beginning with the month of December 1967 through November 1980" (Tr. 25). Later in his findings (Tr. 26), the ALJ stated that the period of overpayment was "May 1973 through November 1980," although he had already stated that "the claimant was properly entitled to mother's insurance benefits ... from May 1977 through September 1980" on her second husband's account (Tr. 25). Regardless of the length of time during which she was allegedly overpaid, however, the ALJ consistently finds $17,248.20 in overpayments, less $9,926 in underpayments and $208 already withheld, for a total of $7,114.20.

According to Mrs. Priolo's testimony, she did not report her 1967 marriage to the SSA because she herself was no longer receiving any benefits (and had received none for four years), and believed that her remarriage had no effect on her *son's* disability benefits. She did not report the remarriage in her 1973 reapplication for mother's benefits because she understood that she was entitled to them as long as her sick child was in her care (Tr. 11, 44). She testified that she had no idea that her new husband was responsible for her son Joseph's support (Tr. 42). Indeed, her new husband never claimed either Joseph or Mrs. Priolo as dependents on his tax returns (Tr. 11).

Plaintiff in her brief states that she used her first husband's name when reapplying for mother's benefits in 1973 because she wanted to emphasize the relationship between herself and the man whose account would provide the benefits. The ALJ did not inquire of the plaintiff on this point.

Mrs. Priolo testified that she received mother's benefits from 1957 to 1963 and from 1973 to 1980 from the account of Joseph's father, Anthony Sebastiano. Joseph continues to receive disability benefits from that account. The payments are sent to Mrs. Priolo as Joseph's representative payee (Tr. 43). Plaintiff denies applying for or receiving mother's benefits during the period 1963 to 1973 (Tr. 41–42). She suggests that the government has confused her mother's benefits with her son's disability benefits, because both were drawn from the account of Anthony Sebastiano and both were addressed to her. Furthermore, Mrs. Priolo states that the government has failed to produce any record of her application for or receipt of

mother's benefits during the years 1963 to 1973 (Tr. 119). She says that when she asked for copies of benefit checks allegedly issued to her from 1970 to 1973, the Administration told her that they had been lost (Tr. 43). Indeed, while there are records of her 1957 and 1973 applications for mother's benefits (Tr. 49–52, 54–57), there is no evidence in the record of any other applications by Mrs. Priolo for such benefits.

Mrs. Priolo acknowledges that she was incorrectly paid mother's benefits from May 1973 to April 1977 (Tr. 118). She attributes this payment, however, to the erroneous information given to her by a Social Security employee, and she thus believes that she is without fault. She denies being overpaid, however, from May 1977 to November 1980, since mother's benefits do not end if a recipient remarries someone entitled to old-age benefits. Mrs. Priolo's second husband was entitled to such benefits beginning in May 1977. 20 C.F.R. 404.-341(b)(3).

According to her affidavit, Mrs. Priolo and her son receive a combined total of $905 per month in Social Security benefits. It is their sole source of income. Their expenses total $887 per month. Plaintiff and her son have no other assets except for the equity in their home and her life insurance policy, which has a cash value of $1,500. Repayment of the alleged overpayment would, she says, be an "extreme hardship" (Tr. 127).

### Discussion

■ 42 U.S.C. § 404(a) provides that whenever more than the correct amount in benefits has been paid to a recipient, the Secretary shall require the overpaid recipient to refund the excess. The Secretary cannot recover overpayment, however, if the overpaid person was without fault with respect to the overpayment, and if such a recovery would either defeat the purpose of Title II of the Act or would be against equity and good conscience. 42 U.S.C. § 404(b); see 20 C.F.R. 404.506; *Valente v. Secretary of Health and Human Services*, 733 F.2d 1037, 1041 (2d Cir.1984); *Cucuz-*

*zella v. Weinberger*, 395 F.Supp. 1288, 1292 (D.Del.1975). If the Secretary decides not to waive recovery, that determination must be supported by substantial evidence in order to be upheld on judicial review. *Valente v. Secretary of Health and Human Services, supra*, 733 F.2d at 1041. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

■ Having examined the record in this case, I find that the Secretary's decision not to waive recovery is not supported by substantial evidence. Accordingly, I reverse and remand to the Secretary for further proceedings.

In determining that the individual was at fault in causing an overpayment, the SSA must consider "all pertinent circumstances," including the recipient's age, intelligence, education, and physical and mental condition. 20 C.F.R. § 404.507. A recipient is at fault if he received the overpayment as a result of: 1) a statement he made that he either knew or should have known was incorrect; 2) a failure to furnish information he knew or should have known was material; or 3) an acceptance of a payment he knew or should have known was incorrect. 20 C.F.R. § 404.507; *Valente v. Secretary of Health and Human Services, supra*, 733 F.2d at 1043; *Cucuzzella v. Weinberger, supra*, 395 F.Supp. at 1292–1293. The ALJ found that the plaintiff "did not exercise due care in reporting the event of her remarriage" (Tr. 25)—presumably a violation of all three prongs of the statutory test for fault.

The ALJ failed, however, to consider another regulation. 20 C.F.R. § 404.510(b) provides that the overpaid recipient is without fault if he accepted payments based on "erroneous information from an official source within the Social Security Administration." Plaintiff repeatedly alleged that she received such information from an SSA

employee (Tr. 37, 42, 81), but the ALJ merely noted this allegation (Tr. 37). He made no attempt to inquire as to what the plaintiff recalled of this alleged incident (Tr. 32–48). There is in fact no evidence that he even considered her allegation in his findings (Tr. 23–26), nor did he make a finding as to plaintiff's credibility on this point, as he ought to. *Cucuzzella v. Weinberger, supra,* 395 F.Supp. at 1295.

Because the question whether the plaintiff was actually erroneously advised by an SSA employee is crucial to determining whether the plaintiff is at fault, the ALJ should have inquired into plaintiff's recollection of the circumstances and made a finding regarding her credibility. *Valente v. Secretary of Health & Human Services, supra,* 733 F.2d at 1046; *Schwingel v. Harris,* 631 F.2d 192, 197 (2d Cir.1980).

The ALJ has an obligation "scrupulously and conscientiously [to] probe into, inquire of, and explore all the relevant facts," *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38, 43 (2d Cir.1972), particularly in view of the fact that the plaintiff was not represented by counsel at the hearing, *Cutler v. Weinberger,* 516 F.2d 1282, 1286 (2d Cir.1975). He did not fulfill this obligation here.

On remand, the ALJ shall set forth his or her analysis on the matter of plaintiff's credibility. He or she should bear in mind that if plaintiff's testimony as to the officially provided erroneous information is believed, there is no requirement that it be corroborated. *See Cucuzzella v. Weinberger, supra,* 395 F.Supp. at 1295 n. 7.

If the plaintiff is found to be without fault, the ALJ must go on to consider whether recovery would defeat the purpose of Title II or be inequitable and against good conscience. If so, there will be no recovery by SSA, according to 20 C.F.R. § 404.506.

Recovery will defeat the purpose of Title II where the overpaid person needs substantially all of his current income to meet necessary living expenses. 20 C.F.R. 404.-508(b); *Cucuzzella v. Weinberger, supra,* 395 F.Supp. at 1297. In this case, a widow who is nearly seventy years old and fully responsible for a seriously handicapped adult child manages to save less than twenty dollars per month after all her expenses are paid. Recovery would thus certainly seem to defeat the purpose of Title II. The ALJ recited the text of this regulation at the beginning of his decision, and ultimately found that recovery would not defeat the Act's purpose, but he presented no analysis on this point. On remand, the ALJ shall clearly set forth his reasoning.

Section 404.506 also holds that if recovery would be inequitable and against good conscience, it will be prohibited. The Secretary's regulations provide two distinct bases for such a determination. *Cucuzzella v. Weinberger, supra,* 395 F.Supp. at 1297; *see* 20 C.F.R. §§ 404.509 and 404.-512(a).

The first, section 404.509, provides that recovery will be waived as inequitable if the individual has relinquished a valuable right or changed his or her position for the worse in reliance on the payments. Here, the plaintiff gave up her job and assumed responsibility for home care of her son in exchange, she believed, for mother's benefits. Recovery would thus appear to be against equity and good conscience. *Cucuzzella v. Weinberger, supra,* 395 F.Supp. at 1298.

The second, section 404.512(a), holds that if the recipient is found to be not at fault because of reliance on erroneous information by an SSA employee, recovery is automatically against equity and good conscience, and is thus waived. Since the ALJ did not inquire into and indeed apparently ignored the plaintiff's testimony regarding her 1973 conversation with an SSA official, he did not consider the applicability of this regulation. On remand, its relevance in this context should be considered if the ALJ finds that the conversation occurred. *See Cucuzzella v. Weinberger, supra,* 395 F.Supp. at 1297, 1298.

This record bristles with crucial but unanswered questions. Possibly aware of this situation, the ALJ at the first hearing

mentioned the need for a second hearing, but he ruled without ever holding it (Tr. 23–26).

I thus reverse the ALJ's decision that plaintiff was not without fault in applying for and accepting certain payments and that repayment of such benefits would neither defeat the purpose of Title II of the Social Security Act nor be against equity and good conscience. The case is remanded for additional findings of fact and for application of the correct standards of law specified in this opinion. The ALJ on remand shall clarify the record with respect to the following: the time period of the alleged overpayments; the plaintiff's credibility; the effect of recovery on the purpose of the Act; and whether recovery would be consistent with equity and good conscience.

SO ORDERED.