**Gordon K. SHUTT, Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH, EDUCA-
TION AND WELFARE,
Defendant-Appellee.**

**No. 73–1472.**

United States Court of Appeals,
Fifth Circuit.

Feb. 22, 1974.

Mark H. Shenfield, West Point, Miss.,
for plaintiff-appellant.

Falton O. Mason, Jr., Asst. U. S.
Atty., H. M. Ray, U. S. Atty., Oxford,
Miss., for defendant-appellee.

Appeal from the United States District Court for the Northern District of
Mississippi.

Before BROWN, Chief Judge, and
RONEY and GEE, Circuit Judges.

GEE, Circuit Judge:

Five hundred pounds of sheet steel
fell on Gordon K. Shutt's head and
back. After allowing Shutt disability
benefits for approximately 2½ years,
the Secretary, through the appropriate
administrative mechanism, determined
that Shutt's disability had ceased. Additionally, the Secretary found that
HEW had overpaid Shutt approximately

$2,500 in benefits, which Shutt was obliged to repay. Finally, the Secretary determined that a subsequent accident, on January 7, 1970, did not entitle Shutt to disability benefits. Shutt sought review of the Secretary's decision in federal district court pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g). The district court affirmed the Secretary. On appeal, Shutt contends that the Secretary's decisions were not supported by substantial evidence. We do not review the case under the substantial evidence standard because we conclude that the district court and the HEW hearing examiner failed to address important fact questions and to apply the appropriate criteria. We vacate and remand for reconsideration.

Shutt sustained severe neck and back injuries as a result of the steel falling on him. He was hospitalized and underwent an operation.[1] The neurosurgeon noted that Shutt was also experiencing bizarre episodes like temporal lobe seizures. Shortly thereafter, he was rehospitalized because of speech and memory difficulties. A neurosurgeon and psychiatrist diagnosed Shutt as suffering from an anxiety conversion reaction. Later in 1967, another psychiatrist concluded that Shutt suffered from a conversion reaction, chronic, severe, manifested by pain in the back, neck, arms and shoulders, plus objective loss of sensation and paralysis of an intermittant nature, left arm and leg. At one time, Shutt was hospitalized following a severe seizure. He suffered a memory loss and tests indicated a mental age of three. The symptoms dissipated and he was released.

He continued to consult a psychiatrist when necessary and when he could afford it. All examinations resulted in guarded prognoses and diagnoses similar to the original evaluation of Shutt's ailments. On January 7, 1970, he again suffered a head injury. On discharge after twenty days in the hospital, the neurosurgeon again diagnosed Shutt's condition as conversion hysteria and pseudoseizures.

Shutt described his symptoms as constant pain in his neck, back, left shoulder, arm and back of his left leg; occasional head pain; occasional pain which drove him to a screaming stage; psychological or psychiatric problems that bother him; mental pressures; and occasional seizures or spells. On the other hand, when he was not suffering extreme pain or undergoing a seizure or spell, Shutt led a rather normal, self-sufficient existence.

In June, 1968, because of financial pressures, Shutt returned to work without his doctor's permission. He held various jobs for 17 of the next 20 months, until his accident in January, 1970. In 1968, he earned $1,513.13; in 1969, he earned $4,802.66, and in 1970, he earned $511.32.

During that period, Shutt held six different jobs, the longest for five months and one for one or two weeks. The jobs included: carpet salesman, small electrical appliance repairman, door-to-door encyclopedia salesman, communications operator trainee, and clerk in a computer room of a bank. Shutt testified that on three of the jobs he was either asked to resign or he was fired because of his medical record. On two occasions, he was asked either to resign or he was fired because he was making too many mistakes. One of the symptoms of his mental impairment was his susceptibility to making errors without being aware of them. He stated, "I can type between 55 to 70 words a minute, but some days —after I look at this over here and type it, it just comes out gibberish." In addition, one of his treating doctors reported that several medications tried failed to help Shutt significantly with his peculiar episodes of misstatements.

---

1. A laminectomy and bilateral facetotomy of L–5, described as a surgical decompression of L–5 to S1 nerve root, bilaterally, after traumatic exacerbation of spondylolysis producing back and bilateral leg pains.

Shutt attended vocational school from April, 1970, to May, 1971, completing a course in home appliance service and repair. He testified that he missed about 38 days of school because of particularly aggravated symptoms, including seizures, on those days. He testified further that, since finishing the course, he had been unsuccessful in obtaining employment. He claimed that employment agencies had told him that it was futile to refer him to employers because of his medical record. Employers would refuse to hire him because of workman's compensation and insurance restrictions. He also stated that potential employers whom he had contacted directly and informed of his medical history would not hire him.

As a result of the physical and mental impairments caused by the first accident, the Bureau of Disability Insurance awarded Shutt a period of disability commencing on September 9, 1966, and entitlement to disability insurance benefits commencing in April, 1967. In a proceeding only peripherally related to this appeal, a hearing examiner determined in July, 1969, that Shutt's benefits should not be reduced because of workman's compensation awarded in August, 1967. That hearing examiner also noted that Shutt had returned to work and found that he was in a trial work period.[2]

While in the hospital during January, 1970, Shutt furnished full information about all the jobs he had held since September, 1966, to a Social Security agent. On May 7, 1970, the Social Security Administration notified Shutt that his disability had ceased as of April, 1969. They informed him that not only did his work record indicate that he was capable of substantial gainful work as of April, 1969, but that he would be required to repay $2,427.60 in payments he had received since June, 1969,[3] unless he could show he was without fault in causing the overpayments and that repayment would cause him financial hardship.[4]

On May 21, 1970, Shutt submitted an answered questionnaire, seeking to show his lack of fault in receiving the overpayments and to show his financial condition. In addition, he submitted a new application for disability benefits alleging a new onset of disability arising from the accident of January 7, 1970. After the Administration determined and notified Shutt that he would still be required to repay the money and denied his new application for disability, he requested reconsideration, which was denied. He then requested and was granted an appeal hearing which was held on June 10, 1971. The decision from that hearing is the subject of this appeal.

The Social Security Act defines disability as:

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . . .

42 U.S.C.A. § 423(d)(1)(A).

The Act authorizes the Secretary to prescribe by regulations:

. . . criteria for determining when services performed or earnings derived from services demonstrate an individual's ability to engage in substantial gainful activity.

42 U.S.C.A. § 423(d)(4).

That section further provides that an individual whose services or earnings exceed the standards set by the Secretary shall be found not to be disabled.

2. 42 U.S.C.A. § 422(c) provides that after establishment of disability an individual may perform remunerative services for nine months (consecutive or non-consecutive) which will not be considered in determining whether his disability has ceased during that period.

3. 42 U.S.C.A. § 416(i)(2)(D)(ii) provides that disability payments will cease the second month following the month in which the disability ceases.

4. See the statutory and regulatory standards set out and discussed infra.

The Secretary's standards include:

20 C.F.R. § 404.1532 Evaluation of work activities.

(a) *In general.* If an individual performed work during any period in which he alleges that he was under a disability . . . the work performed may demonstrate that such individual has ability to engage in substantial gainful activity. If the work performed establishes that an individual . . . is able to engage in substantial gainful activity, he is not under a disability . . . . Work which does not in itself constitute substantial gainful activity, may nevertheless indicate the existence of a residual capacity of such individual to engage in substantial gainful activity. Thus, an individual who utilizes work skills or abilities on a limited basis may not be under a disability if he is capable of increased utilization of such work skills or abilities.

(b) *Substantial gainful activity defined.* Substantial gainful activity refers to work activity that is both *substantial* and *gainful.* Substantial work activity involves the performance of significant physical or mental duties, or a combination of both, productive in nature. Gainful work activity is activity for remuneration or profit (or intended for profit, whether or not a profit is realized) to the individual performing it or to the persons, if any, for whom it is performed, or of a nature generally performed for remuneration or profit. In order for work activity to be substantial, it is not necessary that it be performed on a full-time basis; work activity performed on a part-time basis may also be substantial. It is immaterial that the work activity of an individual may be less, or less responsible, or less gainful, than that in which he was engaged before the onset of his impairment.

(c) *Nature of the work.* The performance of duties involving skill, experience or responsibility, or contributing substantially to the operation of an enterprise is evidence tending to show that an individual has ability to engage in substantial gainful activity.

(d) *Adequacy of performance.* The adequacy of an individual's performance of assigned work is also evidence as to whether or not he has ability to engage in substantial gainful activity. The satisfactory performance of assignments may demonstrate ability to engage in substantial gainful activity, *while an individual's failure, because of his impairment, to perform ordinary or simple tasks satisfactorily without supervision or assistance beyond that usually given other individuals performing similar work, may constitute evidence of an inability to engage in substantial gainful activity* . . . . (emphasis added)

The significance of an applicant's earnings are discussed in:

20 C.F.R. § 404.1534 Evaluation of earnings from work.

(a) *General.* Where an individual who claims to be disabled engages in work activities, the amount of his earnings from such activities may establish that the individual has the ability to engage in substantial gainful activity. Generally, activities which result in substantial earnings would establish ability to engage in substantial gainful activity; however, the fact that an individual's activities result in earnings which are not substantial does not establish the individual's inability to engage in substantial gainful activity. *Where an individual is forced to discontinue his work activities after a short time because his impairment precludes continuing such activities, his earnings would not demonstrate ability to engage in substantial gainful activity* . . . .

(b) *Earnings at a monthly rate in excess of $140.* An individual's earnings from work activities averaging in excess of $140 a month shall be deemed to demonstrate his ability to engage in substantial gainful activity

unless there is affirmative evidence that such work activities themselves establish that the individual does not have the ability to engage in substantial gainful activity under the criteria in § 404.1532 . . . and paragraph (a) of this section. (emphasis added)

In regard to overpayments, the Act provides in 42 U.S.C.A. § 404:

(b) In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

See Morgan v. Finch, 423 F.2d 551 (6th Cir. 1970).[5]

The hearing examiner decided: (1) Shutt's disability had ceased in April, 1969, thus his entitlement to a period of disability and to disability benefits previously established had properly been terminated in June, 1969; (2) Shutt received overpayment of $2,427.60 from July, 1969, to April, 1970, and that repayment should not be waived; and (3) that Shutt was not entitled to a new period of disability or to disability payments rising from his accident of January, 1970.

It appears that the examiner based his first conclusion on the bases of the nature of Shutt's jobs and the amount of his earnings. For his second finding, the examiner relied on his estimation of Shutt's intelligence to conclude that Shutt could not have believed he was entitled to full disability benefits while working: thus, Shutt was not without fault in accepting the overpayments. Additionally, the examiner, without stating what evidence he relied upon, concluded

that it would not defeat the purposes of the Act or be against equity and good conscience to require repayment. Finally, the examiner found that Shutt's second accident caused no significant aggravation of his prior impairments because he was able to attend vocational school, to carry on daily activities normally, and because he had sought only a minimum of medical treatment.

The district court affirmed the examiner's (which became the Secretary's) decision. The court concluded that the examiner's findings about Shutt's disability were supported by substantial evidence and that, although Shutt had notified the other hearing examiner and a Social Security agent of his employment, the examiner's conclusion that Shutt was at fault for the overpayments was correct.

██ Shutt's earnings, which exceeded $140 a month, demonstrated his ability to engage in substantial gainful activity,[6] but the examiner failed to consider Shutt's testimony, about the reasons he held so many jobs and his inability to acquire a job if he revealed his medical history, in light of the clause in 20 C.F.R. § 404.1534(b) providing that, where an individual discontinues work because of his impairments, his earnings would not demonstrate ability to engage in substantial gainful activity, and the "adequacy of an individual's performance" provision in 20 C.F.R. § 404.-1532(d).

██ Serious questions are evident as to whether Shutt's employment history affirmatively demonstrates his inability to engage in substantial gainful activity, Wilson v. Richardson, 455 F.2d 304 (4th Cir. 1972). Although the examiner seemingly relied upon Shutt's job record as evidence of his ability to engage in substantial gainful activity, Shutt's

---

5. 20 C.F.R. § 404.506 provides:
. . . there shall be no . . . recovery . . . with respect to an individual:
(a) Who is without fault, and
(b) Adjustment or recovery would either:
(1) Defeat the purpose of title II of the Act, or

(2) Be against equity and good conscience.
See also 20 C.F.R. § 404.507 and .508.

6. Hedge v. Richardson, 458 F.2d 1065 (10th Cir. 1972); Harris v. Richardson, 450 F.2d 1099 (4th Cir. 1971).

**48**

"sporadic and transitory activities may demonstrate not his ability, but his inability to engage in substantial gainful activity." Wilson v. Richardson, *supra,* at 307.

On remand, Shutt's claim for disability after April, 1969, should be considered in light of the provisions cited above. If it is necessary to determine his claim for disability from the January, 1970, accident, the considerations set out above are applicable, also:

■ Additionally on remand, if necessary, the evidence which indicates that Shutt notified the Administration of his employment and that the hearing examiner in 1969 found that Shutt was still disabled should be considered in determining whether repayment should be waived.

Vacated and remanded.