**Irving CHERNICOFF, Plaintiff,**

v.

**Elliott RICHARDSON, Secretary of Health, Education and Welfare of the United States of America, Social Security Administration, Washington, D. C., Defendant.**

**No. Civ–1972–156.**

United States District Court,
W. D. New York.

Sept. 23, 1975.

Towne, Rubenstein & Snyder, Dunkirk, (Joseph Rubenstein, Dunkirk, N. Y., of counsel), for plaintiff.

Richard J. Arcara, U.S. Atty., (Roger P. Williams, Buffalo, N.Y., of counsel), for defendant.

CURTIN, Chief Judge.

This is a suit brought under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare modifying a prior determination of the hearing examiner as to plaintiff's period of disability under § 216(i) of the Act, 42 U.S.C. § 416(i), and the amount of disability insurance to which the plaintiff is entitled under § 223 of the Act, 42 U.S.C. § 423. Plaintiff Chernicoff filed his complaint on April 7, 1972, seeking reinstatement of the hearing examiner's decision. An answer was filed on February 7, 1973 claiming that the Secretary's decision was supported by substantial evidence and was thus conclusive. Currently pending before this court are cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The facts are not in dispute. In plaintiff's first application for disability insurance benefits, which was filed on February 26, 1968, he alleged an inability to work which began on June 10, 1967 due to a "mental condition." On June 19, 1968, the district office of the Department of Health, Education and Welfare determined that the plaintiff was not disabled and this determination was affirmed by the Social Security Administration on June 27, 1968. It was reasoned that although the plaintiff's previous mental history, as evidenced by hospitalizations and medical reports, indicated that he was a "schizophrenic" of the "chronic undifferentiated type," he was nevertheless able to work and not under a disability as defined by 42 U.S. C. § 423. His initial application was, therefore, denied on July 2, 1968.

Plaintiff filed a second application for disability insurance on June 2, 1970, alleging the same disability and the same date of onset. On June 30, 1970 the district office again determined that the plaintiff was not disabled and this determination was affirmed on July 24, 1970. The reasoning this time was substantially the same, reiterating that plaintiff was "capable of engaging in substantial gainful activity despite significant impairment." The second application was, therefore, also denied on July 31, 1970.

Thereafter, plaintiff filed a request for reconsideration of the denial on August 24, 1970, as the result of which a disability determination based upon "new and pertinent medical evidence" was made on October 1, 1970. This time

it was noted that the plaintiff had "a long history of severe mental impairment of varying intensity over the past twelve years," so that he required "close supervision" and was "severely dependent, paranoid, delusional, hostile." Based upon this new evidence, a determination was made that plaintiff was disabled. At the same time it was determined that such disability began, and hence benefits accrued from, the time of plaintiff's last job, therefore March 16, 1970.

Still unsatisfied, plaintiff requested a hearing on January 28, 1971, which was held on May 7, 1971. On May 11, 1971, the hearing examiner found plaintiff to be under a disability commencing on December 6, 1962. Thereafter the Appeals Council, on its own motion, reviewed the hearing examiner's decision and decided that plaintiff had been disabled during the period from June 10, 1967 through March 1969 (date of disability claimed by plaintiff in his first application), and was thus entitled to disability insurance benefits from June 1967 through May 31, 1969. Plaintiff was also found to be entitled to a second period of disability commencing March 16, 1970. The Appeals Council excluded the periods from December 6, 1962 through June 9, 1967 and from June 1, 1969 through March 15, 1970 from its findings of entitlement to disability benefits. Citing 42 U.S.C. § 416(i)(2)(F) and 20 C.F.R. § 404.-1534, *infra,* the Appeals Council reasoned:

> The assumption of inability to work is rebutted by successful performance of significant duties for remuneration. It is at this point that the burden of proof shifts to the claimant. When

earnings from work activity average in excess of $140.00 a month, as was the case in 1966 and 1969, the claimant must furnish affirmative evidence that the work activity establishes that he did not have the ability to engage in substantial gainful activity . . . .

> In accordance with the proceeding discussion, the Appeals Council is compelled to find that the claimant's work in 1966 and 1969 was demonstrative of his ability to engage in substantial gainful activity.

Consequently, because plaintiff's level of earnings during 1966 and 1969 exceeded $1,680,[1] and because of his alleged failure to carry his burden of proving that these earnings did not demonstrate "substantial gainful activity," the Appeals Council modified the disability period set by the hearing examiner. It is this determination that plaintiff seeks to overturn.

■ The question for decision by this court is whether the Secretary's decision that plaintiff was not under a disability prior to June 10, 1967 and during the period from June 1, 1969 to March 15, 1970 is supported by substantial evidence on the record as a whole, as required by 42 U.S.C. § 405(g). *Gold v. Secretary of HEW,* 463 F.2d 38 (2d Cir. 1972); *Franklin v. Secretary of HEW,* 393 F.2d 640 (2d Cir. 1968); *Kerner v. Flemming,* 283 F.2d 916 (2d Cir. 1960). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

1. According to Exhibit 13, plaintiff's Earning Certificate, he had earned the following amounts over the years:

| | | | |
|---|---|---|---|
| 1954 | $ 15.00 | 1962 | $3,933.00 |
| 1955 | 182.00 | 1963 | 484.00 |
| 1956 | 524.00 | 1964 | 651.00 |
| 1957 | 892.00 | 1965 | 1,009.00 |
| 1958 | — | 1966 | 3,133.00 |
| 1959 | 315.00 | 1967 | 1,673.00 |
| 1960 | 113.00 | 1968 | 1,251.00 |
| 1961 | 1,889.00 | 1969 | 2,066.00 (approx.) |

A disability is defined by 42 U.S.C. § 423(d)(1)(A) as:

. . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . . .

42 U.S.C. § 423(d)(3) goes on to say:

For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

Furthermore, ¶¶ (4) and (5) of that same subsection provide:

(4) The Secretary shall by regulations prescribe the criteria for determining when services performed or earnings derived from services demonstrate an individual's ability to engage in substantial gainful activity.

.    .    .    .    .    .

(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.

Pursuant to the authority granted in § 223(d)(4), the Secretary promulgated a regulation, 20 C.F.R. § 404.1534, which is essential to the determination of disability in the instant case. The regulation states:

(a) *General.* Where an individual who claims to be disabled engages in work activities, the amount of his earnings from such activities may establish that the individual has the ability to engage in substantial gainful activity. Generally, activities which result in substantial earnings would establish ability to engage in substantial gainful activity; . . . Where an individual is forced to discontinue his work activities after a short time because his impairment precludes continuing such activities, his earnings would not demonstrate ability to engage in substantial gainful activity.

.    .    .    .    .    .

(b) *Earnings at a monthly rate in excess of $140.* An individual's earnings from work activities averaging in excess of $140 a month shall be deemed to demonstrate his ability to engage in substantial gainful activity *unless* there is affirmative evidence that such work activities themselves establish that the individual does not have the ability to engage in substantial gainful activity under the criteria in §§ 404.1532 and 404.1533 and paragraph (a) of this section. (Emphasis added.)

Thus, under the Secretary's regulatory scheme, there are two requisites for disability benefits. First, disability must be proven within the meaning of the statute and, second, no "substantial gainful activity" evidenced by work activities with earnings of $140 or more per month can be shown unless there is affirmative evidence that such work activities themselves establish that there is no ability to engage in substantial gainful activity. In the instant case, the interpretation and application of the "unless" clause quoted above is crucial.

In view of the Department's decision and the specific terms of the above stated regulation, a review of the plaintiff's medical history and work experience is in order. In 1953, when plaintiff was fifteen, he was interviewed by a psychiatrist for the first time. The interviewing psychiatrist, Dr. Harry Faver, ordered a series of psychological tests performed upon plaintiff. These tests included a Rorschach Test and a Minnesota and Multiphasic personality inventory, and indicated that plaintiff was at a "high level in the schizophrenic reaction sphere," and that he was "more withdrawn, and more schizophrenic than can be possibly suspected, clinically." According to Dr. Joseph Sconzo, Director of Buffalo State Hospital, the underly-

ing schizophrenic personality uncovered in these tests first clearly manifested itself through identifiable symptoms several years after the initial tests. During the interim, plaintiff had already been treated by several other psychiatrists. Dr. Sconzo noted: "Mr. Chernicoff began showing symptoms of a mental disorder in 1958, when he lost interest in school and became withdrawn and suspicious."

Plaintiff was first hospitalized for his mental condition at Buffalo General Hospital in 1960.[2] After that, plaintiff moved to New York City, where Dr. Sconzo states that he was found to be "hallucinating and also pre-occupied [sic] with death" and was hospitalized again. This hospitalization, during 1962 and 1963 at Gracie Square Hospital and Bellevue Hospital in New York City, involved the administration of "Electro-Convulsant and Sub-Coma Insulin Therapy" to plaintiff. Plaintiff responded very well to the treatment and, initially, showed some improvement. However, in December of 1962, plaintiff experienced what Dr. Sconzo described as "an acute psychiatric episode," after which, he stated, plaintiff "has never been really well." [3]

Plaintiff returned to Buffalo and was admitted to Buffalo State Hospital in May 1963. He was released on convalescent care in July 1963, discharged in August 1964 and then readmitted in May 1965. He was released from the hospital in July 1965, but returned in July 1966. A similar pattern of hospitalization was followed during subsequent years. Plaintiff was readmitted in June 1967, left August 1967, returned November 1967, left December 1967, returned July 1968, left August 1968, and was discharged in February 1969. According to the most recent communication in the record from Buffalo State Hospital, a letter dated May 3, 1971, Dr. Sconzo stated that after-care services were terminated October 28, 1970. Nevertheless, during the interim periods when plaintiff was not in the hospital, and up to the time of the hearing, he was under private psychiatric care and continual medication. The diagnoses of all the examining psychiatrists, dating back to the original diagnosis of Dr. Faver in 1953 through to the most current report from Dr. Sconzo in 1971, all confirmed plaintiff's schizophrenia.

The employment history of Chernicoff, now 37, substantially parallels his record of hospitalization. He has held approximately 22 jobs during the ten-year period from 1961 through 1971. The period of employment for any one job was short, ranging from a few days in many cases to a few months in others. Plaintiff was discharged from all but three of these jobs and these three he quit, on his own admission, due to "nervous breakdowns." The reasons for discharge all stem from plaintiff's "mental condition."

Expert testimony on the question of whether or not plaintiff could support himself through employment further illuminates this employment history. One of Chernicoff's psychiatrists said, after treating him in 1968: "His ability to function in a competitive, gainful situation on a regular predictable basis is very questionable." Dr. Sconzo likewise stated in three separate communications to the Bureau of Disability Determinations during 1970 and 1971 that it was the opinion of Buffalo State Hospital

2. This hospitalization, according to Dr. Murray Yost who treated Chernicoff for several months after his discharge, was due to "severe agitation, paranoid ideation, and suicidal preoccupation." The suicidal preoccupation is of particular interest, as plaintiff made very vague references to it at the hearing, without specifically admitting it. However, suicide seems to be a bigger issue in the eyes of trained psychiatrists than it was in plaintiff's eyes as suicide is mentioned by several psychiatrists at other points in the record.

3. This date was the one determined by the hearing examiner as the date of onset of the disability.

that Chernicoff was "permanently disabled." Dr. Sconzo went on to say:

> I think this case illustrates what may be a stumbling block in the understanding of non-psychiatric agencies; namely, that schizophrenia is not a simple disease entity which falls neatly into one sub-category or another. Most individuals who have longstanding or recurrent disorders show various phases of the schizophrenic process at different times, such as catatonic stupor, paranoid ideation, thinking disorders, associational and emotional disturbances, general inability to cope with simple but realistic every day demands etc. The repeated medical contacts and the frequent returns to psychiatric care or to psychiatric hospitals should indicate that Mr. Chernicoff has not been able to adjust to every day demands for more than brief periods.

From the medical and employment histories of the plaintiff given above, it is clear that plaintiff's mental instability has been recognized as existing since 1953 and that it has been affirmed by both "clinical and laboratory diagnostic techniques." He has met the requirements for disability under 42 U.S.C. § 423. What is not so clear is the existence of a disability during those periods when plaintiff earned more than $140 per month.

Looking at the legislative history behind the regulation in question, 20 C.F.R. § 404.1534, Congress intended to put a specific, though rebuttable, limit upon the amount of money a claimant could earn and still be considered disabled.[4] Plaintiff does not claim that the figure of $140 per month is so artificially low as to be contrary to congressional intent. Rather, plaintiff argues that there was enough evidence to satisfy the burden placed upon him by the "unless" clause of 20 C.F.R. § 404.1534(b). The "unless" clause permits an applicant to introduce evidence that his work record, despite earnings above $140 per month, does not show an ability to engage in substantial gainful activity.

In *Shutt v. Secretary of HEW*, 490 F.2d 43, 47–48 (5th Cir. 1974), an adverse determination of "disability" was made by the Secretary because there were earnings greater than the regulatory $140 per month limit. The Fifth Circuit remanded the case for a closer look at claimant's work record, to see if it really evinced an inability to engage in substantial gainful activity. Shutt was a plaintiff who had held numerous jobs, all of which he was required to leave due to his inability to function adequately on the job. The court said:

> Shutt's earnings, which exceeded $140 a month, demonstrated his ability to engage in substantial gainful activity, but the examiner failed to consider Shutt's testimony, about the reasons he held so many jobs and his inability to acquire a job if he revealed his medical history, in light of the clause in 20 C.F.R. § 404.1534(b) providing that, where an individual discontinues work because of his impair-

---

4. According to the Senate report recommending the enactment of the regulation, allocations to the disability trust fund had to be increased over the years due, among other causes, to the way the term "disability" had been defined, which had greatly increased the number of people who could be considered disabled. To alleviate the problems caused by these growing numbers, it was the intent of Congress to develop more precise guidelines. More specifically, the Senate report said:

> The committee also believes it is necessary to reaffirm that an individual who does substantial gainful work despite an impairment or impairments that otherwise might be considered disabling is not disabled for purposes of establishing a period of disability or for social security benefits based on disability during any period in which such work is performed. The language in the committee's bill, therefore, specifically provides that where the work or earnings of an impaired individual demonstrate ability to engage in substantial gainful activity under criteria prescribed by the Secretary, the individual is not disabled within the meaning of title II of the Social Security Act.

1967 U.S.Code Cong. & Admin.News, 2883.

ments, his earnings would not demonstrate ability to engage in substantial gainful activity, and the "adequacy of an individual's performance" provision in 20 C.F.R. § 404.1532(d). [Citations omitted.]

*Id.* at 47.

█ In this case, like *Shutt*, there is a serious question whether the Secretary had enough evidence regarding plaintiff's work record during the disputed periods to make a determination that he was engaged in substantial gainful activity during those periods. *See Jacobson v. Folsom*, 158 F.Supp. 281 (S.D.N.Y.1957); *see also, Berry v. United States*, 312 U.S. 450, 61 S.Ct. 637, 85 L.Ed. 945 (1940).

Although there is extensive evidence in the record regarding plaintiff's hospitalizations during the disputed periods, the evidence is limited in regard to his work activity. The record contains only Work Activity Reports, which are investigative forms used by the Social Security Administration to determine relevant questions about work history. The reports are available only for some of the jobs Chernicoff held during the disputed periods. Plaintiff submitted evidence listing all his jobs and the reasons for termination, which indicated mental reasons for all terminations. However, without more extensive evidence concerning plaintiff's work activities during the disputed periods, this court cannot hold that the Secretary's decision was supported by substantial evidence. *Icenhour v. Weinberger*, 375 F.Supp. 312 (E.D.Tenn.1973), and *Eggleston v. Richardson*, 351 F.Supp. 127 (E.D.Pa.1972).

Under the standards set out in *Richardson v. Perales, supra*, a "reasonable mind" would not accept the evidence as "adequate" to support the conclusion of the Secretary that plaintiff was not disabled during the periods in question. The question still exists whether plaintiff's impairment during the times in question interfered with his employment sufficiently to place him within one of the exceptions of the "unless" clause of 20 C.F.R. § 404.1534(b). Therefore, both motions for summary judgment are denied and the case is remanded to the Secretary for further determination of the facts involving plaintiff's employment during the years in question. Particular features of plaintiff's work record which should be explored are the nature and quality of the work plaintiff performed, the number of jobs held, and the reasons for termination of those jobs.

So ordered.